UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DARRYL EVERSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-1360** |
| **NAUTILUS INSURANCE COMPANY, ET AL.** | **SECTION L (1)** |

**ORDER & REASONS**

Before the Court is Plaintiff Darryl Everson's motion for partial summary judgment on liability. R. Doc. 35.[1] Defendants Nautilus Insurance Company, Romesburg Trucking, and David Rugg oppose the motion. R. Doc. 41. Plaintiff replied. R. Doc. 43. Considering the record, the briefing, and the applicable law, the Court now rules as follows.

I.  **BACKGROUND**

This case arises out of alleged personal injuries to Plaintiff Darryl Everson ("Everson"). R. Doc. 1-1 at 2. On December 9, 2021, Plaintiff was driving in Montz, Louisiana when he alleges Defendant David Rugg ("Rugg") negligently cut down a tree along the roadway. *Id.* Plaintiff claims that the tree fell on top of his car, injuring his back and neck. *Id.* at 3. Plaintiff alleges that Rugg was working for Defendant Romesberg Trucking Inc. ("RTI") which was insured by Nautilus Insurance Company. *Id.* He alleges that RTI and Rugg failed to exercise reasonable care in their conduct—cutting trees near an active roadway—because they failed to warn, failed to watch for oncoming vehicles, negligently trained Rugg, and created a hazardous condition. *Id.* at 3-4. Plaintiff seeks damages for emotional distress, past and future medical expenses, pain and suffering, property damage, and more. *Id.* at 4-5.

---

[1] With leave of Court, Plaintiff re-filed an amended motion for summary judgment, R. Doc. 40. This Order relies on the amended motion but serves to address both R. Doc. 35 and R. Doc. 40.

1

Plaintiff filed suit in state court and RTI removed to federal court, alleging diversity jurisdiction. R. Doc. 1. In their answers, Defendants generally deny Plaintiff's allegations and plead several affirmative defenses, including that they complied with all law, regulations, and standards and that Plaintiff's injuries were caused in part or in whole by his own actions. R. Doc. 1-2 at 34 (Nautilus' Answer); R. Doc. 1-4 at 17 (RTI's Answer); R. Doc. 10 at 4-5 (Rugg's Answer).

Per the police report of the incident, Rugg told law enforcement that he was cutting trees when a sudden gust of wind caused the tree in question to fall in the direction of the road as opposed to the direction he intended. R. Doc. 1-1 at 9. That police report also describes that the tree caused "crush damage to the trunk and roof" of the car and that Plaintiff sustained injuries to his head and neck. *Id.*

**II. PRESENT MOTION**

Plaintiff moves for summary judgment. R. Doc. 40. He argues that RTI is clearly liable under the theory of *respondeat superior* because both Rugg and Roger Romesberg, the corporate representative of RTI, testified in deposition that Rugg was in the course and scope of his employment when he cut down the tree. *Id.* at 4. And, Plaintiff contends, Rugg was negligent in cutting down the tree. *Id.* at 6. First, as to the duty element of the negligence analysis, Plaintiff contends that "Rugg, as the custodian of the tree at the time he was cutting it, had a duty to exercise reasonable care." *Id.* He further avers that both Rugg and Romesberg admitted at deposition that Rugg was responsible for safely cutting down the tree. *Id.* at 7. He also presents a publication on "Tree Removal Safety" issued by the Louisiana Department of Health and Hospitals, which advises on the unpredictability and danger of tree-cutting and advises, "never attempt to cut a tree into the wind." *Id.*

Second, as to the breach element, Plaintiff contends that "Rugg had a number of safety options available . . . but chose not to use any of the safety measures readily available to him." *Id.* at 9. Everson contends that such options included (1) running a safety line between the tree and the "skid-steer," a backhoe-like piece of machinery which was on site at the time (2) having an assistant push the skid-steer up against the tree to ensure it would fall in the correct direction, (3) using a wooden wedge to make the tree fall in the correct direction or (4) using flagmen to shut down the road completely while the tree was cut. *Id.* Plaintiff contends that, although Rugg stated in deposition that a flagman was on site, "the alleged flagman was actually 20 feet behind Mr. Rugg while he was cutting the tree . . . therefore, Mr. Everson was hit by the tree before he would have reached the flagman." *Id.* at 10. Furthermore, Plaintiff notes that the police officer who responded to the scene did not see the flagman, or any other witnesses other than himself and Rugg, at the scene. *Id.* at 11. Plaintiff notes that he has been unable to obtain the contact information of the alleged flagman or any other employees who may have been on the scene. *Id.* Finally, Plaintiff also contends that "this is an appropriate situation for the doctrine of *res ipsa loquitur*" because [a] tree falling on a moving vehicle is sufficiently unusual to give rise to an inference that someone must have been negligent." *Id.*

Third, as to causation, Plaintiff maintains that Rugg's act of cutting down the tree was the cause-in-fact of his injuries. *Id.* at 12. First, he notes that although Rugg maintained in his deposition that the tree's direction was altered by the wind, Rugg also admitted that the tree fell because he cut it. *Id.* Furthermore, Plaintiff contends that Defendants cannot succeed on a "force majeure" defense. *Id.* He argues that Defendants waived this affirmative defense because they failed to plead it in their answers. *Id.* Moreover, even if Defendants could raise force majeure, Plaintiff notes that this defense requires that "the accident is directly and exclusively due to natural causes without human intervention" and "no negligent behavior committed by the

3

defendant(s) has contributed to the accident." *Id.* at 14. Plaintiff maintains that Defendants cannot make this showing. *Id.* As to "legal cause," Plaintiff argues that Rugg breached his duty to cut the tree safely and failed to abide by available safety measure to protect the public. *Id.*

Fourth, as to damages, Plaintiff notes that his treating physician and Defendants' Insurance Medical Exam Physician agree that the accident caused injuries to his back and neck, for which he is undergoing treatment. *Id.*

Defendants oppose the motion. R. Doc. 41. They contend that Plaintiff has not proven that they owed a duty to Plaintiff because he did not "point to any violation of law or provision that Rugg did not follow." *Id.* at 5. They argue that even Plaintiff's expert arborist could not point to any specific standards or regulations which would have required Rugg to use particular safety measures. *Id.* Moreover, they note that RTI was engaged to perform the roadwork through a subcontract with another company, D&J Enterprises. *Id.* Defendants contend that Plaintiff cannot show that Rugg's conduct violated any provisions of a "Safety Agreement" which was contained in the subcontract. *Id.* Finally, Defendant's also argue that Plaintiff's citation of the Louisiana Department of Health and Hospitals' publication on "Tree Removal Safety" is irrelevant to the instant case as it was promulgated sometime between 2008 and 2016 and does not apply to RTI's contract. *Id.*

Next, Defendants argue that genuine disputes of material fact exist as to whether Defendants' conduct constituted a breach. *Id.* at 8. First, Defendants contend that there is a dispute as to whether a gust of wind impacted the trajectory of the tree in an unpredictable way. *Id.* It avers that Rugg has consistently maintained that, although the tree fell because he cut it, it changed trajectory because of a gust of wind. *Id.* Second, Defendants note that there is a dispute about whether Rugg had the authority to stop cutting the tree for safety reasons. *Id.* They point to Rugg's deposition, where he noted that only people in charge of "dump sites" had the authority to stop work. *Id.* Finally, in their statement of contested facts, Defendant take issue with Plaintiff's contention that Rugg did not

4

employ any available safety measures. R. Doc. 41-1. They note that he explained that he "kept the skid loader close to me because you never know when the wind will pick up." *Id.*

Plaintiff replied. R. Doc. 43. He argues that Defendant's contention that Rugg had no duty to cut the tree safely is ridiculous and in direct contradiction to the testimony of Rugg and Rosenberg. *Id.* at 3. As to Defendant's argument that Rugg kept the skid steer close by for safety, Plaintiff contends that "[w]hile the skid steer could have been used, obviously just parking it nearby was not an effective safety measure. It does not take an expert to know that stopping the chain saw and putting it down safely, walking over a few feet (through unmaintained weeds) to get into and start the skid steer—is probably going to be too late." *Id.* at 5.

### III. APPLICABLE LAW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

### IV. DISCUSSION

The Court denies Plaintiff's motion. First, the Court notes that, in their briefing, the parties refer to the expected testimony of their respective expert arborists. The Court recognizes that the

5

parties have both filed *Daubert* motions to exclude each other's expert arborists. R. Doc. 42; R. Doc. 45. The Court will rule on these motions shortly. However, regardless of whether the opinions of these experts are ultimately admitted or excluded, there are genuine issues of material fact in this case which preclude summary judgment.

When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant. *Coleman*, 113 F.3d at 533. Here, a jury could conceivably find that Defendants acted reasonably in their implementation of safety measures. First, Rugg testified at deposition that one lane of traffic was closed while he cut the tree. R. Doc. 41-1 at 33. Second, when asked "was anybody out there that was acting as a safety person to stop motorists from traveling on the highway?" he noted, "we did have flaggers." *Id.* at 13. The parties further dispute where these flaggers were located and whether they would have been visible to oncoming traffic. Plaintiff notes that Rugg testified in deposition that one flagger was "20 yards behind him" when he cut the tree. *Id.* Plaintiff thus argues that oncoming traffic would not have been able to see the flagger. R. Doc. 40 at 13. However, without diagrams, maps, or further testimony, the Court cannot determine whether or not this flagger would have been invisible to traffic. Third, there is a material dispute of fact as to whether Rugg was utilizing the skid steer as a safety measure. In deposition, Rugg testified: "I kept the skid steer close to me because you never know when the wind will pick up." R. Doc. 41-4 at 46. Although Plaintiff contends that merely having the skid-steer nearby was not a sufficient safety measure, this judgment must be made by the jury.

Fourth, there is a material issue of fact over the impact of the wind on the accident. Plaintiff avers that Defendants cannot argue that accident was caused by a gust of wind because this is essentially a "force majeure" argument and Defendants failed to plead force majeure as an affirmative defense. Plaintiff is correct that "failure to raise an affirmative defense under rule 8(c) in a party's first responsive pleading generally results in a waiver." *Giles v. Gen. Elec. Co.*, 245 F.3d 474,

6

491 (5th Cir. 2001). However, the Fifth Circuit has held that "[w]here the matter is raised in the trial court in a manner that does not result in unfair surprise . . . technical failure to comply precisely with Rule 8(c) is not fatal." *Id.* at 492. Accordingly, a "defendant does not waive an affirmative defense if he "raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in [his] ability to respond." *Id.*

Here, Plaintiff has not been prejudiced by Defendants' "technical failure" to plead force majeure as an affirmative defense. *Id.* The police report of this incident—which was included in the record when the case was removed to this court in April of 2023—describes that on the scene of the accident, Rugg told officers that "as he was cutting the tree, a gust of wind caused the tree to fall in the wrong direction." R. Doc. 1-1 at 9. Similarly, Rugg testified in deposition on January 31, 2024, that "the wind blew and the tree broke off and went the wrong way." R. Doc. 41-4 at 12. Most tellingly, Plaintiff's expert arborist specifically addressed Rugg's allegations that the wind caused the accident in his expert report. R. Doc. 45-5. Plaintiff's expert opines, "[t]here was a comment by Rugg that the wind was the causal agent of the tree falling in the wrong direction. However, he also stated that the tree was basically like a pole . . . [a] pole has very little wind resistance and, more likely than not, was not the causal agent of the tree tipping back." *Id.* at 5. Overall, given the fact that Plaintiff has known about the wind argument for at least a year and a half, has deposed Defendants on this argument, and had his expert address this argument, the Court finds that Plaintiff has not been prejudiced by Defendants' failure to plead "force majeure." Defendants may argue at trial that the wind caused the tree to fall. Accordingly, the effect of the wind, and whether Defendants properly accounted for the wind, remains a material issue of fact in this case.

While Plaintiff argues that the doctrine of *res ipsa loquitur* applies given the unusual nature of the case, the Court will not apply this doctrine on summary judgment. As Plaintiff himself represents, "the doctrine permits, but does not require, the *trier of fact* to *infer* negligence." R. Doc.

7

40 at 11 (citing *Cangelosi v. Our Lady of the Lake Regional Med. Ctr.*, 564 So. 2d 654, 665 (La. 1989) (emphasis added). On the instant motion for summary judgment—where the Court must view all evidence in the light most favorable to Defendants—the Court cannot "infer negligence" on the part of the Defendants. *Id.*

Overall, the Court finds that there are material issues of fact regarding Defendants' selection and implementation of safety measures and whether these safety measures were sufficient and reasonable. There are also causation issues as to the effect of the wind and whether Defendants properly accounted for the wind. Accordingly, although Plaintiff has presented strong evidence, summary judgment is not proper. *See Thomas as Tr. of Performance Prod., Inc. v. Hughes*, No. 16-951, 2019 WL 1560939, at *7 (W.D. Tex. Feb. 21, 2019) (holding that although "Plaintiffs have a strong case for a fact-finder" genuine issues of material fact remained and the issue was therefore "inappropriate for summary judgment").

## V. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's motion for summary judgment, R. Doc. 35, as amended R. Doc. 40, is **DENIED.**

New Orleans, Louisiana, this 9th day of September 2024.

HONORABLE ELDON E. FALLON