UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DARRYL EVERSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-1360** |
| **NAUTILUS INSURANCE COMPANY, ET AL.** | **SECTION L (1)** |

**ORDER & REASONS**

Before the Court are two *Daubert* motions: one filed by Defendants Nautilus Insurance Company, Romesburg Trucking, and David Rugg and one filed by Plaintiff, Darryl Everson. R. Doc. 45; R. Doc. 42. Each party seeks to exclude the testimony of the other party's expert arborist. Given the related nature of the motions, the Court will address both in a single Order. Considering the record, the briefing, and the applicable law, the Court now rules as follows.

I. **BACKGROUND**

This case arises out of alleged personal injuries to Plaintiff Darryl Everson ("Everson"). R. Doc. 1-1 at 2. On December 9, 2021, Plaintiff was driving in Montz, Louisiana when he alleges Defendant David Rugg ("Rugg") negligently cut down a tree along the roadway. *Id.* Plaintiff claims that the tree fell on top of his car, injuring his back and neck. *Id.* at 3. Plaintiff alleges that Rugg was working for Defendant Romesberg Trucking Inc. ("RTI") which was insured by Nautilus Insurance Company. *Id.* He alleges that RTI and Rugg failed to exercise reasonable care in their conduct—cutting trees near an active roadway—because they failed to warn, failed to watch for oncoming vehicles, negligently trained Rugg, and created a hazardous condition. *Id.* at 3-4. Plaintiff seeks damages for emotional distress, past and future medical expenses, pain and suffering, property damage, and more. *Id.* at 4-5.

1

Plaintiff filed suit in state court and RTI removed to federal court, alleging diversity jurisdiction. R. Doc. 1. In their answers, Defendants generally deny Plaintiff's allegations and plead several affirmative defenses, including that they complied with all laws and standards and that Plaintiff's injuries were caused in part or in whole by his own actions. R. Doc. 1-2 at 34 (Nautilus' Answer); R. Doc. 1-4 at 17 (RTI's Answer); R. Doc. 10 at 4-5 (Rugg's Answer).

Per the police report of the incident, Rugg told law enforcement that he was cutting trees when a sudden gust of wind caused the tree in question to fall in the direction of the road as opposed to the direction he intended. R. Doc. 1-1 at 9. That police report also describes that the tree caused "crush damage to the trunk and roof" of the car and that Plaintiff sustained injuries to his head and neck. *Id.*

## II.  PRESENT MOTION

Defendants move to exclude the testimony of Plaintiff's expert arborist, Dr. Frederick Fellner. R. Doc. 45. Dr. Fellner opined that Rugg made "a series of misjudgments, any one of which could have been corrected" such as failing to use available safety measures, failing to control traffic, and failing to communicate with on-scene flagmen. R. Doc. 45-6 at 4-5. First, Defendants challenge Dr. Fellner's qualifications: they argue that "he is not a safety specialist but an arborist." R. Doc. 45-1 at 3. Defendants note that when asked about his expertise in deposition, he described it as "the evaluation and health and consultation of trees, either singular trees or trees that are in groups typically in urban settings." *Id.* Because Dr. Fellner's specialty is tree health, not tree-cutting safety, Defendants claim he is not qualified to opine of whether Rugg took appropriate safety measures. *Id.*

Next, Defendants challenge Dr. Fellner's methodology as unreliable for several reasons. First, Defendants note that Dr. Fellner did not determine which species of tree hit Plaintiff's vehicle. *Id.* at 8. They argue that this renders his methodology unreliable, especially given the

2

fact that he opined in deposition that the species of tree is an important factor to consider when cutting a tree. *Id.* Second, Defendants argue that Dr. Fellner failed to sufficiently determine the weather conditions on the day of the accident. *Id.* at 11. Although Defendants concede that Dr. Fellner looked at weather data in connection with his report, they note that the weather data he looked at was not attached to his report. *Id.* at 12. Moreover, they contend that "his testimony should be excluded since he did not use his own skills as an arborist to research the weather conditions in Montz on the day of the accident." *Id.* Rather, Defendants claim that he relied on weather reports provided to him by Plaintiff's attorney and that he failed to determine the accuracy of these provided reports. *Id.* Third, Defendant contends that Dr. Fellner's methodology is unreliable because he never visited the site of the accident despite testifying in deposition that "[h]opefully, I would get a chance to review the site." *Id.* at 8.

Fourth, Defendants note that in deposition, Dr. Fellner was unable to remember details about the case, such as the name of the road where the accident happened or the exact date of the accident. *Id.* at 14. They allege that this "calls into question the detail and relevance of his analysis." *Id.* Fifth, they aver that Dr. Fellner failed to research whether any executive orders or ordinances had been issued regarding debris clean-up in the wake of Hurricane Ida. *Id.* at 15. And finally, they aver that Dr. Fellner's testimony is not reliable because he opined that Rugg made safety errors without ever articulating "any specific provisions of law that the Defendants failed to adhere to." *Id.* at 17.

Plaintiff opposes the motion. R. Doc. 55. He argues that Dr. Fellner is qualified and notes that he worked for LSU for 26 years in a position where he was "responsible for public safety with respect to risk management and maintenance of trees." *Id.* at 2. Plaintiff also contends that Defendant's criticisms of Dr. Fellner's report are either inconsequential details or misinterpretations of Dr. Fellner's report: (1) he did, in fact, consider the weather (2) he was unable to identify the tree

3

species only because Defendants improperly disposed of the tree (3) his decision not to research executive orders for tree removal was a proper abstention from offering legal opinions and (4) his testimony that Defendants failed to meet industry safety standards will assist the jury. *Id.* at 10-19.

Plaintiff also seeks to exclude the testimony of Defendants' expert arborist, James Culpepper. R. Doc. 42. First, Plaintiff maintains that "no curriculum vitae or other information providing Mr. Culpepper's qualifications, other than identifying himself as 'Consulting Arborist' on the first page of his report, have been provided." R. Doc. 42-1 at 3. Accordingly, Plaintiff argues that that Defendants have failed to show that Mr. Culpepper is qualified to offer expert testimony. *Id.* Moreover, Plaintiff contends that Mr. Culpepper's testimony must be struck for Defendants' failure to comply with Federal Rule of Civil Procedure 26(a)(2)(B), which requires parties to make expert disclosures including "the witness's qualifications, including a list of all publications authored in the previous 10 years" and "a list of all other cases which, during the previous 4 years, the witness testified as an expert" and a "statement of the compensation to be paid." *Id.* at 9.

Second, Plaintiff argues that "Mr. Culpepper's report seems to lack a methodology." *Id.* at 5. Plaintiff notes that Mr. Culpepper's report consists of four paragraphs. *Id.* In the first paragraph, Mr. Culpepper notes that the time of the accident is unknown, and that Plaintiff left the scene of the accident and later returned. *Id.* at 6. Plaintiff argues this testimony will not help the jury, as they will hear about the facts of the accident from the witnesses, and that the testimony about Plaintiff leaving the scene has no connection to Mr. Culpepper's expertise as an arborist. *Id.* Next, in the second paragraph, Mr. Culpepper observes that "[t]here was no research of the weather" in Dr. Fellner's report and notes, "I have attached the weather report for December 9, 2021, from the Kenner Airport." *Id.* Plaintiff argues that this allegation that Dr. Fellner did not consider the weather is simply untrue, as Dr. Fellner's report lists in his consulted materials "Kenner LA Weather history

including wind speed data." *Id.* at 7. Plaintiff contends that Dr. Fellner also considered and refuted Rugg's testimony that a gust of wind caused the tree to fall. *Id.*

Next, Plaintiff contends that the third paragraph of Mr. Culpepper's report only consists of quoting snippets of Dr. Fellner's deposition, such as Dr. Fellner's statement that "cutting down a tree is not an exact science." *Id.* at 7. He notes that this paragraph does not include any analysis or opinions. *Id.* Finally, Plaintiff takes issue with the fourth paragraph of Mr. Culpepper's report, which critiques Dr. Fellner for failing to visit the site of the accident and failing to identify the species of tree at issue. *Id.* Plaintiff contends that this opinion fails to consider that Dr. Fellner was retained years after the accident and that it is no longer possible to identify the tree or the exact scene. *Id.* Moreover, Plaintiff notes that Mr. Culpepper makes no mention of having visited the scene himself, despite criticizing Dr. Fellner for failing to do so. *Id.* Overall, Plaintiff contends that Defense counsel can question Dr. Fellner about not visiting the scene and not identifying the tree in cross-examination and that Mr. Culpepper's testimony is thus unhelpful to the jury. *Id.*

Defendants oppose the motion. R. Doc. 53. They argue that Plaintiff could have obtained more information about Mr. Culpepper and his testimony by deposing him, which Plaintiff failed to do. *Id.* at 2. They content that Mr. Culpepper is a "veteran arborist" who has testified in fourteen cases, many of which involved falling trees. *Id.* at 3. Mr. Culpepper's testimony will assist the factfinder, they contend, because he can opine on the flaws in Dr. Fellner's methodology such as his failure to visit the accident site, failure to analyze the weather, and failure to identify the applicable safety standards. *Id.* at 6. Defendants also attach Mr. Culpepper's resume, publications, trial experience, and statement of compensation. R. Docs. 53-2, 53-4, and 53-5.

### III. LEGAL STANDARD

District courts have discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). In *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 of the Federal Rules of Evidence requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

First, Rule 702 requires that an expert must be properly qualified. "[G]enerally, however, if there is some reasonable indication of qualifications, the court may admit the expert's testimony and then leave to the jury the extent of those qualifications." *Urda v. Valmont Indus., Inc.*, 561 F. Supp. 3d 632, 638 (M.D. La. 2021).

Second, an expert's testimony must be reliable. The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93. In *Daubert*, the Supreme Court listed several non-exclusive factors relevant to assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Id.* at 593-95. However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quotations omitted). In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at

152. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Third, expert testimony must also be relevant. Testimony is relevant if the expert's reasoning and methodology "fits" the facts of the case and the testimony will assist the trier of fact to understand the evidence. *Daubert*, 509 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003).

## IV. DISCUSSION

The Court addresses each party's motion to exclude the other's expert in turn.

### A. Defendants' Motion to Exclude Dr. Fellner's Testimony

The Court finds that Dr. Fellner is qualified to offer expert testimony in this case. Although Defendants contend that Dr. Fellner's testimony "should be excluded because he is not a safety specialist but an arborist," the Court finds that this characterization is inaccurate. R. Doc. 45-1 at 3. According to his resume, Dr. Fellner worked for Louisiana State University for 25 years as an Arboricultural and Green Infrastructure Manager. R. Doc. 55-1 at 1. In this role, he was responsible for "all landscape construction" including "protection . . . pre, during and post construction" and oversaw "risk reduction for the protection of people and property from failure of trees." *Id.* Given this expertise, the Court finds that Dr. Fellner is qualified to opine on tree removal safety.

Defendant also critiques Dr. Fellner's methodology for his alleged failure to consider the weather, identify the tree species, identify specific safety standards, recall specific details of the accident accurately in deposition, or visit the site of the accident. R. Doc. 45-1. The Court finds that these factors "affect the weight of the evidence rather than its admissibility." *Joseph v. Doe*, 542 F. Supp. 3d 433, 437 (E.D. La. 2021). Here, Plaintiff has provided logical explanations for some Fellner's alleged failures, such as that he was unable to identify the species of the tree because

Defendants destroyed it. Accordingly, the Court does not find that Defendants' criticisms of Fellner's testimony raise sufficient concerns as to his methodology to warrant excluding his testimony.

Moreover, at trial Defendants "will be able to cross-examine [the expert] fully on the factors he considered, those he failed to consider, assumptions he made, and the manner in which he evaluated the various factors." *In re Quality Lease & Rental Holdings, LLC*, No. BR 14-6005, 2019 WL 5865596, at *5 (S.D. Tex. Nov. 8, 2019). And, Defendants have even engaged a rebuttal expert to critique Dr. Fellner's testimony. Accordingly, they will be able to adequately address their concerns about Dr. Fellner's methodology at trial.

### B. Plaintiff's Motion to Exclude Mr. Culpepper's Testimony

#### i. Failure to Disclose

Plaintiff avers that Defendants failed to comply with Rule 26(a)(2)(B) by failing to timely disclose Mr. Culpepper's qualifications, publications from the prior 10 years, list of prior cases, and statement of compensation. Federal Rule of Civil Procedure 37(c)(1) provides that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." In evaluating "whether a violation of [R]ule 26 is harmless," courts consider four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose. *Texas A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

Here, the Court will not exclude Mr. Culpepper's testimony for Defendants' alleged failure to provide Plaintiff with Mr. Culpepper's resume. First, the Court does not have sufficient information to determine whether Defendants met the timeliness requirements of Rule 26(a)(2)(D). Under that Rule, "if the evidence is intended solely to contradict" the testimony of another expert, the party must

make their disclosures "within 30 days after the other party's disclosure." Here, the Court does not know when Plaintiff made its disclosures as to Dr. Fellner. Accordingly, the Court cannot discern whether Defendants made timely disclosures as to Mr. Culpepper.

Moreover, the Court notes that Plaintiff chose not to depose Mr. Culpepper. And, Plaintiff received the required information as to Mr. Culpepper on September 9, 2024, nearly a month in advance of the October 7, 2024 trial date. R. Doc 48. Accordingly, Plaintiff will have sufficient time to review the information and perhaps even take Mr. Culpepper's deposition before trial. Thus, the Court finds that the prejudice to Plaintiff, if any, has been minimal. *Texas A&M Rsch. Found.*, 338 F.3d at 402. And given that the Court has allowed Plaintiff's expert arborist to testify, the Court finds that the equities favor allowing Defendants' expert to testify as well. *Id.*

    ii.    ***Daubert* Analysis**

The Court finds that Mr. Culpepper is qualified to testify. He has been a licensed arborist since 1979. R. Doc. 53-5 at 1. Among other experience, he spent 33 years with the Louisiana Forestry Commission, in positions such as the "Chief of Information, Education, and Urban Forestry." *Id.* Additionally, he founded an arboricultural consulting company specializing in "hazard tree assessments" and "tree protection planning." *Id.* at 2. Finally, he has qualified in several courts to offer expert testimony in cases where falling trees caused injuries or death. *See* R. Doc. 53 at 5.

Although Mr. Culpepper's report is brief, the Court finds that his testimony is sufficiently reliable. He has "extensive experience in the [] industry" which will assist the trier of fact in determining the weight to give Dr. Fellner's testimony. *United States v. Austin Radiological Ass'n*, No. A-10-CV-914-LY, 2014 WL 2515696, at *3 (W.D. Tex. June 4, 2014). Moreover, his "report shows that he considered significant documentation in formulating his opinions and that his findings are not merely personal opinions." *Id.* He reviewed incident reports, weather reports,

statutes, and deposition testimony in preparing his report. R. Doc. 42-3 at 1. As the Court noted above in relation to Dr. Fellner, Plaintiff will have an opportunity to cross-examine Mr. Culpepper at trial.

Plaintiff also argues that Mr. Culpepper needlessly recites certain facts of the case in his report, such as facts about Plaintiff allegedly leaving the scene of the accident. R. Doc. 42-1 at 6. If, at trial, Mr. Culpepper begins to go into improper detail about case facts that are unrelated to his expertise and testimony as an arborist, the Court will entertain objections at that time.

## V. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's motion in limine to exclude Dr. Fellner, R. Doc. 45, is **DENIED.** Plaintiff's Motion in limine to exclude Mr. Culpepper, R. Doc. 42, is also **DENIED.**

New Orleans, Louisiana, this 16th day of September 2024.

_____
HONORABLE ELDON E. FALLON