UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DARRYL EVERSON** | CIVIL ACTION |
| **VERSUS** | NO. 23-1360 |
| **NAUTILUS INSURANCE COMPANY, ET AL.** | SECTION L (1) |

### ORDER & REASONS

Before the Court is Plaintiff Darryl Everson's motion to exclude the testimony of Dr. Robert Morris, an expert radiologist retained by Defendants Nautilus Insurance Company, Romesburg Trucking, and David Rugg. R. Doc. 44. Defendants oppose the motion. R. Doc. 52. Plaintiff replied. R. Doc. 59. Considering the record, the briefing, and the applicable law, the Court now rules as follows.

### I. BACKGROUND

This case arises out of alleged personal injuries to Plaintiff Darryl Everson ("Everson"). R. Doc. 1-1 at 2. On December 9, 2021, Plaintiff was driving in Montz, Louisiana when he alleges Defendant David Rugg ("Rugg") negligently cut down a tree along the roadway. *Id.* Plaintiff claims that the tree fell on top of his car, injuring his back and neck. *Id.* at 3. Plaintiff alleges that Rugg was working for Defendant Romesberg Trucking Inc. ("RTI"), which was insured by Nautilus Insurance Company. *Id.* He alleges that RTI and Rugg failed to exercise reasonable care because they, failed to watch for oncoming vehicles, negligently trained Rugg, and created a hazardous condition by cutting trees near an active roadway. *Id.* at 3-4. Plaintiff seeks damages for emotional distress, past and future medical expenses, pain and suffering, property damage, and more. *Id.* at 4-5.

1

Plaintiff filed suit in state court, and RTI removed to federal court, alleging diversity jurisdiction. R. Doc. 1. In their answers, Defendants generally deny Plaintiff's allegations and plead several affirmative defenses, including that they complied with all applicable laws and standards and that Plaintiff's injuries were caused in part or in whole by his own actions. R. Doc. 1-2 at 34 (Nautilus' Answer); R. Doc. 1-4 at 17 (RTI's Answer); R. Doc. 10 at 4-5 (Rugg's Answer).

Per the police report of the incident, Rugg told law enforcement that he was cutting trees when a sudden gust of wind caused the tree in question to fall in the direction of the road as opposed to the direction he intended. R. Doc. 1-1 at 9. That police report also describes that the tree caused "crush damage to the trunk and roof" of the car and that Plaintiff sustained injuries to his head and neck. *Id.*

## II. PRESENT MOTION

Plaintiff moves to exclude the expert testimony of Dr. Robert Morris, Defendants' expert radiologist. R. Doc. 44. Defendants retained Dr. Morris to read and interpret MRI images of Plaintiff's spine area, specifically his L1 through S5 disc spaces. R. Doc. 44-1 at 5. Dr. Morris opined that all the disc spaces he reviewed were "unremarkable" except for the L4-L5 disc space, which Dr. Morris found to show a "small disc bulge with moderate central disc protrusion, resulting in moderate bilateral recess stenosis." R. Doc. 44-3 at 1. Overall, Dr. Morris opined that "the exact age of the disc bulge and protrusion at L4-L5 is indeterminate from this single exam." *Id.* He also found that "aside from the disc bulge and protrusion at L4-L5, the other levels appear normal." *Id.*

Plaintiff argues that Dr. Morris' testimony should be excluded for two reasons. First, Plaintiff maintains that "no curriculum vitae or other information providing Dr. Morris' qualifications, other than identifying himself as an 'MD' on his report, has been provided." *Id.* at 2.

Thus, Plaintiff contends that Dr. Morris' testimony must be struck for Defendants' failure to comply with Federal Rule of Civil Procedure 26(a)(2)(B), which requires parties to make expert disclosures as to:

> (i)    a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii)   the facts or data considered by the witness in forming them;
> (iii)  any exhibits that will be used to summarize or support them;
> (iv)   the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v)    a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi)   a statement of the compensation to be paid for the study and testimony in the case.

Plaintiff contends that he has not received *any* of this required information. *Id.* at 7.

Next, Plaintiff contends that Dr. Morris' methodology is not reliable. *Id.* at 5. He first contends that Dr. Morris only reviewed the L1-S5 disc spaces and failed to explain why he did not review other imaged disc spaces such as the T11-T12 and T12-L1. He also argues that it does not "appear that he reviewed any other medical records relating to Mr. Everson's medical treatment," and that Dr. Morris' report is "silent about which documents he reviewed in preparing his opinions." *Id.* He argues that Dr. Morris does not opine on Plaintiff's December 7, 2023 MRI exam at all, nor offer any indication that he reviewed that exam. *Id.* at 6. Accordingly, Plaintiff requests that Dr. Morris at least be prohibited from offering any opinions on that exam. *Id.* Finally, Plaintiff contends that Defendant already has another expert—Dr. Paul Hubbel, a pain management specialist—who has provided opinions on Plaintiff's cervical and lumbar spine and the causation of Mr. Everson's injuries. *Id.* at 7. He argues that the testimony of Dr. Morris, a second medical expert who did not treat Plaintiff, would be duplicative and confusing. *Id.* at 8.

Defendants oppose the motion. R. Doc. 52. As to Plaintiff's argument that they failed to make Rule 26 disclosures, Defendants note that even though Dr. Morris was listed on their

witness list, Plaintiffs chose not to depose him. Accordingly, they contend that "Plaintiff was properly made aware of Defendants' plans to call Dr. Morris." *Id.* at 2. As to Plaintiff's argument that Dr. Morris' methodology is unreliable because he failed to examine Plaintiff or review his medical history, Defendants note that "[a]s a board-certified radiologist, Dr. Morris has no need to see the patient since he is reviewing films, only." *Id.* at 5. They note that they intend to use Dr. Morris' testimony to "challenge Everson's arguments relative to the extent and severity of his alleged injuries" and to contend that Plaintiff's injuries are the result of a "pre-existing condition." *Id.* at 6. They note that "Dr. Morris' testimony could be helpful to the jury because it is well-known in the medical community that middle-aged people such as Everson, who is 50, can have cervical and lumber abnormalities over time without sustaining any trauma." *Id.* at 8. They also note their intent to advance the theory that Plaintiff's spine injuries were caused by his "excessive weight." *Id.*

Plaintiff replied. R. Doc. 59. He notes that Dr. Morris does not offer opinions on many of the propositions mentioned by Defendants, such as Plaintiff's alleged pre-existing condition or the possibility that his condition is caused by his weight. *Id.* at 2. He avers that "Defendants' expert's failure to offer opinions on obesity and causation is not harmless and would be trial by ambush." *Id.* Accordingly, he requests that the Court "limit his testimony to the information contained within his one page report and exclude any testimony concerning obesity, high blood pressure, diabetes, heart conditions and any alleged pre-existing condition." *Id.* at 4.

Defendants filed a sur-reply. R. Doc. 72. They contend that Plaintiff's motion must be denied on "procedural grounds" because Plaintiff's Counsel omitted to sign the motion, as is required by the Federal Rule of Civil Procedure 11(a). *Id.* at 1. Plaintiff notes in response that Counsel overlooked to sign the signature block, but that Rule 8 of this Court's "Administrative Procedures for Electronic Case Filings and Unique Procedures and Practices for Electronic

4

Filings" provides that: "The user log-in and password required to submit documents to the Electronic Filing System serve as the Filing User's signature on all electronic documents filed with the Court. They also serve as a signature for all purposes of the Federal Rules of Civil Procedure." R. Doc. 59 at 5.

### III. LAW AND ANALYSIS

Plaintiff contends that Dr. Morris' testimony should be excluded because (1) Defendants failed to comply with 26(a)(2)(B) and (2) Dr. Morris' methodology is not reliable. The Court takes these arguments in turn.

**A. Defendant's violation of Rule 26(a)(2)(B) can be rendered harmless by the recent continuance in this matter.**

Federal Rule of Civil Procedure 37(c)(1) provides that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." In evaluating "whether a violation of [R]ule 26 is harmless," courts consider four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose. *Texas A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

Defendants argue that they complied with Rule 26(a)(2)(B) by including Dr. Morris on their witness list. Moreover, they contend that Plaintiff could have obtained the information by deposing Dr. Morris. These arguments are meritless. "Rule 26(a)(2)(B) [] squarely puts the burden on the party presenting the experts to summarize 'the facts and opinions,' not on the opposing party to figure it out." *Curley v. Zuerner, M.D.*, No. 116-67, 2020 WL 9813464, at *1 (D.R.I. Apr. 20, 2020). Plaintiff

is not obligated to depose Defendants' expert to obtain the information that Defendants are required to produce in Rule 26 disclosures.

Although the Court finds that Defendant's violation of Rule 26 is not "substantially justified," the Court concludes that the violation is "harmless." This case has recently been continued, and Plaintiff now has several more months to review Defendants' disclosures. *See Texas A&M Rsch. Found.*, 338 F.3d at 402. Accordingly, the Court will not exclude Dr. Morris' testimony on this basis. However, the Court will require Defendants to make the required disclosures by Wednesday, October 16, 2024.

### B. Dr. Morris' testimony is sufficiently reliable.

District courts have discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 of the Federal Rules of Evidence requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

An expert's testimony must be reliable. The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93. In *Daubert*, the Supreme Court listed several non-exclusive factors relevant to assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Id.* at 593-95. However, a court's

6

evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quotations omitted). In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Expert testimony must also be relevant. Testimony is relevant if the expert's reasoning and methodology "fits" the facts of the case and the testimony will assist the trier of fact to understand the evidence. *Daubert*, 509 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003).

Here, the Court finds that Dr. Morris' testimony is sufficiently reliable. Given the nature of the radiological practice—analysis of discrete images—courts routinely allow expert radiologists to testify even where they have not reviewed the plaintiff's medical records or examined the plaintiff. *See Pacific v. Costco Wholesale Corp.*, No. 18-CV-1097, 2020 WL 5833647, at *3 (E.D. Wis. Feb. 28, 2020) ("Given what a radiologist does, [this expert's] education and training as a radiologist, and [his] specific task in this case, he is not required to review [Plaintiff's] thousands of pages of medical records or [Plaintiff's] physician's causation report to render his opinion as to what the imaging studies show."); *see also Marshall v. Wal-Mart Stores E., L.P.*, No. 8:20-CV-1835, 2022 WL 2904881, at *2 (M.D. Fla. July 22, 2022) (holding that a board-certified radiologist could "offer opinion testimony at trial regarding his radiologic interpretation of the images he reviewed" even where he did not review the patient's medical records or examine him).

7

Plaintiff argues that allowing Dr. Morris to testify would be duplicative and confusing to the jury because Defendant has engaged another medical expert, Dr. Hubbel, to opine on causation. The Court disagrees. Even if the Court prohibited Dr. Morris from testifying, Dr. Hubbel might still refer to Dr. Morris' report at trial. *See* Fed. R. Evid. 703 (allowing experts to discuss the reports of other experts in certain circumstances). Accordingly, prohibiting the jury from hearing about Dr. Morris' opinions from Dr. Morris himself would increase, rather than decrease, the jury's confusion about the separate specialties and opinions of Dr. Morris and Dr. Hubbel.

Although the Court will allow Dr. Morris to testify, the Court will grant Plaintiff's request that Dr. Morris' testimony be limited to the opinions expressed in his report. R. Doc. 59 at 6; *see Borel v. Gulf Offshore Logistics, LLC*, No. CV 18-8188, 2019 WL 8112499, at *2 (E.D. La. July 24, 2019) ("This Court limits an expert's testimony to the four-corners of his report. Thus, even though the report itself will not be admitted into evidence or shown to the jury, the report is important insofar as it delineates the permissible bounds of the expert's opinion testimony."). To be clear, Dr. Morris will only be allowed to testify as to opinions expressed in his report including the specific "findings" as to each disc and the two opinions he provides: (1) "the exact age of the disc bulge and protrusion at L4-L5 is indeterminate from this single exam" and (2) "aside from the disc bulge and protrusion at L4-5, the other levels appear normal." R. Doc. 44-3.

In their briefing, Defendants mention various uses for Dr. Morris' testimony such as proving that Plaintiff had a pre-existing condition, that his weight caused his injuries, and that there is a consensus in the medical community that middle aged people have cervical and lumbar abnormalities. R. Doc. 52 at 6-8. While Defendants may feel that Dr. Morris' two listed opinions support those propositions, the Court notes that Dr. Morris does not actually offer any of these opinions in his report. If, at trial, Defendants ask Dr. Morris to opine outside of the scope of the opinions listed in his report, the Court will sustain an objection at that time.

Finally, the Court will not strike Plaintiff's motion for failure to sign. Pursuant to this Court's "Administrative Procedures for Electronic Case Filings and Unique Procedures and Practices for Electronic Filings," the Court will accept Plaintiff's Counsel's use of her electronic filing username and password to submit the motion as a signature under these circumstances.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's motion in limine to exclude Dr. Morris, R. Doc. 44, is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants make complete Rule 26(a)(2)(B) disclosures to Plaintiff by October 16, 2024.

New Orleans, Louisiana, this 9th day of October, 2024.

HONORABLE ELDON E. FALLON